20-1025 (Lead); 20-1138 (Consolidated)

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

ENVIRONMENTAL HEALTH TRUST; CONSUMERS FOR SAFE CELL PHONES; ELIZABETH BARRIS; THEODORA SCARATO

CHILDREN'S HEALTH DEFENSE; MICHELE HERTZ; PETRA BROKKEN; DR. DAVID O. CARPENTER; DR. PAUL DART; DR. TORIL H. JELTER; DR. ANN LEE; VIRGINIA FARVER, JENNIFER BARAN; PAUL STANLEY, M.Ed.
*Petitioners*

v.

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES OF AMERICA
*Respondents*

Petition for Review of Order Issued by the
Federal Communications Commission

## DECLARATION OF W. SCOTT MCCOLLOUGH IN SUPPORT OF PETITIONERS' APPLICATION BY MOTION FOR ATTORNEYS' FEES

I, W. Scott McCollough, declare as follows:

1.    I am an attorney admitted to practice before this Court.

2.    I am the principal of McCollough Law Firm PC, one of the attorneys of record for Petitioners Children's Health Defense; Michele Hertz; Petra Brokken; Dr. David O. Carpenter; Dr. Paul Dart; Dr. Toril H. Jelter; Dr. Ann Lee; Virginia Farver, Jennifer Baran and Paul Stanley, M.Ed. (collectively

"CHD" or "Petitioners"). McCollough Law Firm PC served as outside counsel for CHD.

3.    This declaration is submitted in support of CHD's Application by Motion for Attorneys' Fees Under the Equal Access to Justice Act ("Motion"). This Motion seeks recovery of some of the attorney's and Paralegal fees charged by my firm to prosecute the matter. Robert F. Kennedy, Jr. also served as counsel and was on the papers but Petitioners do not seek recovery of any fees for his time or services. CHD also assigned other personnel, including subject-matter experts, to this effort and they dedicated and extraordinary amount of time to the Matter. Even though those costs are at least arguably recoverable under 28 U.S.C. §2412(d)(2)(A), Petitioners do not seek recovery here.

4.    I am familiar with and have reviewed the standards for claiming fees under the Equal Access to Justice Act ("EAJA").

5.    Children's Health Defense ("CHD") is a national non-profit 501(c)(3) organization whose mission is to end the epidemic of children's chronic health conditions by working aggressively to eliminate harmful exposures to environmental toxins via education, obtaining justice for those already injured and promoting protective safeguards. CHD has no parent corporation, and no publicly-held company has a 10% or greater ownership interest in the organization. *See* Petitioners' Opening Brief, p. 4 (iv), Doc

#1870852 (Nov. 12, 2020). CHD entirely funded this litigation on behalf of all CHD-related Petitioners and is therefore eligible to recover fees, assuming all other criteria are met.

Relevant Experience and Background

6.      I received a B.A. from the University of Texas at Austin in 1978 and a J.D. from the University of Texas at Austin in 1982. I received my license to practice law in Texas in 1983. I am a member of the Texas state bar. I am admitted to practice before this Court along with the Fifth, Ninth and Tenth Circuits and various federal district courts, including the Western District of Texas.

7.      I have been practicing trial and appellate litigation for thirty-eight years. My principal focus has always been administrative law, with most of that time dedicated to telecommunications and utility regulatory matters. I have handled more than two thousand state and federal administrative proceedings (adjudications and rulemakings). Over the years I have participated in more than one hundred judicial appeals from agency decisions in state or federal courts and was a lead or primary counsel for many of those.  A true and correct copy of my current biography is attached to this Declaration as Attachment A.

Fees Sought for this Action

8.     McCollough Law Firm, PC represented the CHD Petitioners in their petition seeking review of the FCC's decision to terminate its Notice of Inquiry in FCC ET Docket No. 13-84, *Reassessment of Federal Communications Commission Radiofrequency Exposure Limits and Policies* (Dec. 4, 2019).[1] All activity began in January 2020. In accordance with Firm procedures, a written fee agreement applied to work performed by Firm personnel for the CHD Petitioners. The Firm opened a specific internal matter identification code for work performed in handling the Petition for Review. No overlapping billing statements are claimed with respect to other work done on behalf of any of the CHD Petitioners in any other matter. I refer in this Declaration solely to work performed in connection with the Petition for Review as work performed on the "Matter."  Work performed in seeking recovery of attorneys' fees under EAJA, or for the costs we have already recovered pursuant to Fed. R. App. Proc. 39, is not included as work performed on the "Matter."

9.     I am the sole Firm-assigned attorney for the Matter. I was responsible for the initial billing and I prepared the fee recovery summary contained

---

[1] The Firm did not have any involvement in the case while it was at the Commission. All fees requested herein relate to work done on the Petition for Review of the decision after it was issued.

in Attachment D. All fees incurred in connection with Matter have been fair, reasonable, and appropriate.

10.    My customary fee is $350 per hour. This rate is quite low in light of my experience and expertise. I am familiar with the hourly billing rates customarily charged by private-sector attorneys and other law-firm personnel possessing a similar level of experience and expertise as those performing work for our Firm on the Matter. Based on my personal knowledge of the District of Columbia legal market (and theWashington, D.C. area generally), as well as communications with clients, attendance at bar functions and other professional activities, and trade press reports, the actual billing rates charged for each timekeeper in the Matter are at (indeed far below) market rates for comparable firms, especially in the D.C. area and for FCC matters; most of my peers charge up to or more than $750 per hour. I have consciously set my fee low so that consumers, non-profits, governmental agencies and small competitive providers with limited resources can better afford the kind of all-too-common and often unavoidable but costly and complex litigation in this area.

11.    The adjusted statutory rates used in connection with this Motion are also well below prevailing market rates in the District of Columbia, as demonstrated by information from the Justice Department. In light of *DL v. District of Columbia*, 924 F.3d 585 (D.C. Cir. 2019) the U.S. Attorney's Office

for the District of Columbia, Civil Division now uses the "*Fitzpatrick*" matrix (available at https://www.justice.gov/usao-dc/page/file/1189846/download) to establish prevailing market rates in the Washington, D.C. area. The current "*Fitzpatrick*" matrix (Hourly Rates for Legal Fees for Complex Federal Litigation in the District of Columbia" for attorneys with 35+ years' experience was $731 per hour in 2020 and is now $736 per hour.[2] *See* Attachment B. This information further reflects the reasonableness of the rates claimed in connection with the Matter.

12.    CHD seeks fees only at EAJA's statutory rate of $125 per hour, plus an upward adjustment for cost-of-living increases. The cost-of-living adjustments have been calculated based on the Consumer Price Index for All Urban Consumers (CPI-U) for the Washington, D.C. area. Attachment C is a true and correct copy of CPI-U data for the years 2020 and 2021, which was obtained from the Bureau of Labor Statistics Databases, Tables & Calculators by Subject page at https://data.bls.gov/cgi-bin/surveymost?cu, and selecting "Washington, All items - CUURS35ASA0. I then chose "Output Options" "From 1996 to 2021" to obtain the information in Attachment C. The cost-of-living adjustments reflect the annual CPI-U data for 2020 and the semi-annual

---

[2] Fitzpatrick Matrix note 2 recognizes it is not intended for use in cases in which the hourly rate is limited by statute. *E.g*., 28 U.S.C. § 2412(d). Petitioners refer to it only to justify reasonableness. As noted, they are using the statutory formula.

CPI-U data for 2021. The statutory cap is $125. The CPI-U annual average for when that cap was enacted in March of 1996 was 155.7. The 2020 CPI-U for 2020 was 267.157 and the CPI-U for the first half-year of 2021 is 273.603.[3] The basic formula for the calculation is:

$$\frac{\$125 \times \text{CPI-U for year work performed}}{155.7}$$

Accordingly, the adjusted annual billing rates for 2020 and 2021 are:

2020 rate = ($125 × 267.157) / 155.7 = $214.48 per hour

2021 rate = ($125 × 273.603) / 155.7 = $219.65 per hour

13.     Throughout the Matter, I and the other timekeeper (a Paralegal) kept contemporaneous records of time spent and recorded the time in the Firm's record-keeping system. Both the amount of time spent each day and a description of the work performed have been recorded. We used our billing information as the source then reformatted it for clarity in presentation.

14.     Attachment D forms the detailed justification for our fee recovery request. Certain reductions and adjustments were made to the original source data to arrive at the total number of hours claimed for recovery. They are detailed below.

---

[3] The CPI-U data for the first half of 2021 is the most recent data currently available. See Attachment C.

15.    Billing entries for certain tasks (and the associated number of hours) were eliminated based on a good-faith understanding of what items courts typically do and do not grant as recoverable under EAJA as a general matter. Specific entries corresponding to items for which recovery is not claimed – *e.g.*, duplication of effort, or where time has been spent on clerical tasks or media relations – have been eliminated. Other entries that are irrelevant to the determination of this Motion were eliminated and no fees are sought regarding them.

16.    CHD initially filed in the Ninth Circuit[4] and the other Petitioner group came to this Court.[5] The Commission sought transfer of the Ninth Circuit case to this Court. The CHD Petitioners vigorously contested transfer, but to no avail: the Ninth Circuit ordered transfer on April 24, 2020. We have voluntarily removed all billing entries related to the contested transfer. We also removed all entries related to admission to the Ninth Circuit, consistent with precedent.

17.    The Petitioners sought an order from this Court remanding to the Commission and requiring reasoned decisionmaking with regard to the order

---

[4] *Children's Health Defense; et al., v. Federal Communications Commission; United States of America*, Ninth Circuit Case No. 20-70297 (filed Feb. 2, 2020).

[5] *Environmental Health Trust, Consumers for Safe Cell Phones, Elizabeth Barris, and Theodora Scarato v. Federal Communications Commission; United States of America*, D.C. Circuit Case No. 20-1025, Doc. #1827086 (filed Jan. 31, 2020).

terminating the Notice of Inquiry. It was one "lawsuit" seeking a specific type of relief (remand for reasoned decisionmaking) and all individual arguments in support of that relief were related; in other words, they were each contentions raised in support of the same relief and all concerned the same factual scenario. *Am. Petroleum Inst. v. United States EPA*, 72 F.3d 907, 911-12 (D.C. Cir. 1996). The case could not have been brought or litigated though "separate lawsuits." *C.f.*, *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Thus all efforts toward the single form of relief sought should be recoverable since Petitioners obtained the goal sought (remand for reasoned decision). *Am. Petroleum Inst., supra*.; *Hensley*, *supra*.; *Goos v. Nat'l Ass'n of Realtors*, 68 F.3d 1380, 1385 (D.C. Cir. 1995). Stated succinctly, Petitioners obtained "excellent results" and any "reduction must be justified in light of the [Petitioners'] overall degree of success." *Goos v. Nat'l Ass'n of Realtors*, 74 F.3d 300, 302 (D.C. Cir. 1996) (on rehearing).

18.     The Court's decision disposed the Matter by addressing fifteen related arguments for remand and whether there was reasoned decisionmaking or other error for on that point. The Court found remand was necessary for eight of the fifteen reasoned decisionmaking arguments pressed by the Petitioners. It also rejected a NEPA procedural argument and found that five Petitioner-suggested failures had not been adequately preserved below and were therefore

not properly before the Court. The discrete arguments in support of remand brought by the Petitioners were or related to:

a.    Standard of Review;

b.    General standards in light of evidence of negative health effects caused by exposure to RF radiation at levels below the limits set by the Commission's 1996 guidelines;

c.    Standards in light of evidence of radiation sickness, and adverse effects on sleep, memory, learning, perception, motor abilities, prenatal and reproductive health, and children's health;

d.    Failure to respond to comments concerning environmental harm caused by RF radiation;

e.    Failure to discuss the implications of long-term exposure to RF radiation;

f.    Failure to discuss effects of RF pulsation or modulation (two methods of imbuing radio waves with information);

g.    Failure to discuss the implications of technological developments that have occurred since 1996, including the ubiquity of wireless devices and Wi-Fi, and the emergence of "5G" technology;

h.    Failure to adequately explain the Commission's refusal to modify its procedures for determining whether cell phones comply with its RF limits;

i.    Standards in light of evidence of cancer;

j.    Individual statutory and common law based individual rights;

k.    Americans with Disabilities Act and Fair Housing Act;

l.    Costs and benefits;

m.    Burden of proof;

n.    Individual remedies; and

o.    NEPA – Failure to issue EA or EIS

19.    The Petitioners prevailed on argument a – h (8 arguments). They did not prevail on arguments i – o (7 arguments).

20.    Even though (as explained above) Petitioners should recover fees expended on all arguments because they were all related to the same relief and obtained excellent results, Petitioners have made voluntary reductions to mitigate any concerns regarding total cost "in light of the [Petitioners'] overall degree of success." *Goos v. Nat'l Ass'n of Realtors*, 74 F.3d at 302 (on rehearing). Those voluntary reductions are explained below.

21.    All time recorded where the billing entry reflects the work related to an argument where the Court did not agree warranted remand (issues i – o) was voluntarily removed. The removed attorney time totaled 113.55 attorney hours and 95.3 Paralegal hours.

22.    Attachment D to this Declaration is a spreadsheet that fairly and accurately summarizes the Firm's contemporaneously maintained time records, net of all adjustments. The entries have been edited and in some instances broken out into separate rows to avoid the type of "block billing" reasonableness review issues identified in *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004).

23.    The services rendered and time expended on this action were fair, reasonable, and appropriate in connection with obtaining the successful result on the Petition for Review in this action.

24.    I performed all aspects of the attorney work undertaken on behalf of the CHD Petitioners, including briefing and arguing the case before this Court. The claimed hours, net of all reductions are 707.5 attorney and 234.2 Paralegal hours in 2020, and 85.2 attorney and 0 Paralegal hours in 2021. The total hours for both years are 792.7 attorney hours and 234.2 Paralegal hours.

25.    The Firm assigned work to one Paralegal who assisted in a substantive way in the Matter as needs arose by conducting legal research, assisting in the preparation and editing of the various documents for filing (especially the Deferred Appendix) and assisting with preparation for argument. This biller's name is Pandy Shen. Ms. Shen was a third-year law student at the University of Texas. She was specifically hired for this project because of her unique skills that fit the firm's needs. Ms. Shen was adept at managing and organizing large volumes of files and documents for case presentation and also well-versed in grammar and writing. Ms. Shen oversaw and was substantially involved in the major task of document identification within the FCC record, then the gathering, organization and creation of the Deferred Appendix. Ms. Shen also assisted in the preparation of the Standing affidavits and reviewed and

commented on the briefing content and gathered some of the caselaw used in briefing and oral argument preparation.

26.    The Firm billed Ms. Shen at $60 per hour. This is significantly lower than the U.S. Attorney's Office for the District of Columbia, Civil Division "Fitzpatrick matrix" 2020 ($199) and 2021 ($200) amounts for "Paralegals/Law Clerks." In *Richlin Security Service Co. v. Chertoff*, 553 U.S. 571 (2008), the Supreme Court held that a prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates. The petitioner's law firm in that case billed paralegal fees "ranging from $50 per hour to $95 per hour." The Supreme Court found that those amounts were reasonable and within the market rate during the period involved (2004-2005). Therefore $60 per hour is reasonable and clearly below the market rate for Paralegal/Law Clerks in 2020-2021.

27.    The figures in Attachment D were all drawn from contemporaneously maintained billing records, and they fairly and accurately summarize the actual billing, after all adjustments.

28.    In sum, the following total hours are being claimed, by timekeeper: W. Scott McCollough, 792.7 hours and Pandy Shen, 234.2 hours. These figures are all drawn from contemporaneously maintained billing records, which are fairly and accurately summarized in Attachment D. The result of applying the

13

attorney hours to the CPI-adjusted statutory rate and then adding Paralegal hours produces a total reasonable amount of **$184,515.07**. CHD requests an order awarding fees in that amount.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed December 13, 2021, at Dripping Springs, Texas.

_____

W. Scott McCollough

**McCollough Declaration Attachment A**

**W. SCOTT MCCOLLOUGH**
Principal, McCollough Law Firm PC
2290 Gatlin Creek Rd.
Dripping Springs, Texas 78620
Phone: 512.888.1112
Fax: 512.692.2522
wsmc@dotlaw.biz



**EDUCATION**
Licensed May 1983
University of Texas School of Law: J.D., August, 1982 (with Honors)
University of Texas at Austin: B.A. in Government/Pre-Law, 1978 (with Honors)

**PRACTICE**
Unparalleled knowledge and experience relating to those places where technology and regulation intersect – and often collide – all the way up the protocol stack.

Clients include competitive communications companies, Internet service and application providers. Focus on public law and regulation relating to telecommunications, computers, Internet, privacy, procurement, electric and gas utilities, economic regulation, consulting, governmental relations, and instruction and training to individuals, groups, companies and governmental agencies.

Past Contract Consumer Advocate (representing residential and small business consumers) with City of Austin Electric Utility (1994-1999). Former Regulatory Counsel for Texas ISDN Users Group and Texas Internet Service Providers Association.

**PRIOR EMPLOYMENT EXPERIENCE**
**Shareowner, McCollough Henry PC**, February, 2009 to May, 2017.
**Sole Proprietor, Law Offices of W. Scott McCollough**, May, 2002 to January, 2009.
**Shareholder, Stumpf, Craddock, Massey & Pulman**, April 2000 to April, 2002.
**Sole Shareowner, McCollough and Associates, P.C.**, July 1998 to 2000.
**Sole Shareowner, W. Scott McCollough, P.C.**, August 1995 to July 1998.
**Partner, Bledsoe, Brown, Evans & McCollough**, April 1994 to April 1996.
**Faculty member, Center for Lifelong Engineering Education**, 1987 to 2002.
Instructor in "Telecommunications Management and Regulation" course for government and private industry voice and data network managers.

**Chief, Public Agency Representation Section, Assistant Texas Attorney General**, June 1984 to January, 1994 Represented State of Texas before regulatory agencies with jurisdiction over gas, telephone, water and electric utilities, and on appeal. Assisted and advised state agencies and local 9-1-1 emergency service providers in utility and network planning, purchasing, operation and interconnection. Represented agencies in billing and rating disputes with utilities. Served as regulatory counsel for General Services Commission and regulatory and general counsel for Advisory Commission on State Emergency Communications. Past Member, State Cogeneration Council and Relay Texas Advisory Council.

**Associate, Bickerstaff, Heath & Smiley**, May 1983 to June 1984
Telecommunications, general/administrative/civil law.

**Computer Operator, Contributing Editor, Biomedical Engineering Department, Biological Transport Lab, University of Texas at Austin,** January 1979 to June 1984.
Researched medical, biological, chemical aspects of novel treatment for end-stage renal disease. Formulated, generated, computed and compiled mathematical modeling and analysis of data for nationwide testing program sponsored by National Institutes of Health.

**PERSONAL DATA**
Born: October 30, 1954, San Antonio, Texas
Service in U.S.M.C., Grade E-5, MOS 0351; Legal Clerk, Administrative Law Section, Staff Judge Advocate Office; Disabled Veteran; Honorable Discharge January 1976.

**McCollough Declaration Attachment B**

### THE FITZPATRICK MATRIX

Hourly Rates ($) for Legal Fees for Complex Federal Litigation in the District of Columbia

| Years Exp. / Billing Yr. | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|---|---|---|---|
| 35+ | 535 | 563 | 591 | 619 | 647 | 675 | 703 | 731 | 736 |
| 34 | 534 | 562 | 590 | 618 | 646 | 674 | 702 | 729 | 734 |
| 33 | 532 | 560 | 588 | 616 | 644 | 672 | 700 | 728 | 733 |
| 32 | 530 | 558 | 586 | 614 | 642 | 670 | 698 | 726 | 730 |
| 31 | 527 | 555 | 583 | 611 | 639 | 667 | 695 | 723 | 728 |
| 30 | 524 | 552 | 580 | 608 | 636 | 664 | 692 | 720 | 725 |
| 29 | 521 | 549 | 577 | 605 | 633 | 661 | 689 | 717 | 721 |
| 28 | 517 | 545 | 573 | 601 | 629 | 657 | 685 | 713 | 717 |
| 27 | 512 | 540 | 568 | 596 | 624 | 652 | 680 | 708 | 713 |
| 26 | 508 | 536 | 564 | 592 | 620 | 648 | 676 | 704 | 708 |
| 25 | 502 | 530 | 558 | 586 | 614 | 642 | 670 | 698 | 703 |
| 24 | 497 | 525 | 553 | 581 | 609 | 637 | 665 | 693 | 697 |
| 23 | 491 | 519 | 547 | 575 | 603 | 630 | 658 | 686 | 691 |
| 22 | 484 | 512 | 540 | 568 | 596 | 624 | 652 | 680 | 684 |
| 21 | 477 | 505 | 533 | 561 | 589 | 617 | 645 | 673 | 677 |
| 20 | 470 | 498 | 526 | 553 | 581 | 609 | 637 | 665 | 670 |
| 19 | 462 | 490 | 518 | 546 | 574 | 602 | 630 | 658 | 662 |
| 18 | 453 | 481 | 509 | 537 | 565 | 593 | 621 | 649 | 653 |
| 17 | 445 | 473 | 500 | 528 | 556 | 584 | 612 | 640 | 645 |
| 16 | 435 | 463 | 491 | 519 | 547 | 575 | 603 | 631 | 635 |
| 15 | 426 | 454 | 482 | 510 | 538 | 566 | 593 | 621 | 626 |
| 14 | 416 | 443 | 471 | 499 | 527 | 555 | 583 | 611 | 615 |
| 13 | 405 | 433 | 461 | 489 | 517 | 545 | 573 | 601 | 605 |
| 12 | 394 | 422 | 450 | 478 | 506 | 534 | 562 | 590 | 594 |
| 11 | 382 | 410 | 438 | 466 | 494 | 522 | 550 | 578 | 582 |
| 10 | 371 | 399 | 427 | 455 | 483 | 510 | 538 | 566 | 570 |
| 9 | 358 | 386 | 414 | 442 | 470 | 498 | 526 | 554 | 558 |
| 8 | 345 | 373 | 401 | 429 | 457 | 485 | 513 | 541 | 545 |
| 7 | 332 | 360 | 388 | 416 | 444 | 472 | 500 | 528 | 532 |
| 6 | 319 | 347 | 375 | 403 | 431 | 458 | 486 | 514 | 518 |
| 5 | 305 | 332 | 360 | 388 | 416 | 444 | 472 | 500 | 504 |
| 4 | 290 | 318 | 346 | 374 | 402 | 430 | 458 | 486 | 489 |
| 3 | 275 | 303 | 331 | 359 | 387 | 415 | 443 | 471 | 474 |
| 2 | 260 | 287 | 315 | 343 | 371 | 399 | 427 | 455 | 458 |
| 1 | 244 | 272 | 300 | 328 | 356 | 384 | 412 | 439 | 442 |
| 0 | 227 | 255 | 283 | 311 | 339 | 367 | 395 | 423 | 426 |
| P* | 130 | 140 | 150 | 160 | 169 | 179 | 189 | 199 | 200 |

* = Paralegals/Law Clerks

*Published by the U.S. Attorney's Office for the District of Columbia, Civil Division*

Explanatory Notes

1.  This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared to assist with resolving requests for attorney's fees in complex civil cases in District of Columbia federal courts handled by the Civil Division of the United States Attorney's Office for the District of Columbia.  It has been developed to provide "a reliable assessment of fees charged for complex federal litigation in the District [of Columbia]," as the United States Court of Appeals for the District of Columbia Circuit urged.  *DL v. District of Columbia*, 924 F.3d 585, 595 (D.C. Cir. 2019).  The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia, nor has it been adopted by other Department of Justice components.

2.  The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees.  *E.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b).  A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).  The matrix is not intended for use in cases in which the hourly rate is limited by statute.  *E.g.*, 28 U.S.C. § 2412(d).

3.  For matters in which a prevailing party agrees to payment pursuant to this fee matrix, the United States Attorney's Office will not request that a prevailing party offer the additional evidence that the law otherwise requires.  *See, e.g., Eley v. District of Columbia*, 793 F.3d 97, 104 (D.C. Cir. 2015) (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (requiring "evidence that [the] 'requested rates are in line with those prevailing in the community for similar services'")).

4.  The years in the column on the left refer to an attorney's years of experience practicing law.  Normally, an attorney's experience will be calculated based on the number of years since an attorney graduated from law school.  If the year of law school graduation is unavailable, the year of bar passage should be used instead.  Thus, an attorney who graduated from law school in the same year as the work for which compensation is sought has 0 years of experience.  For all work beginning on January 1 of the calendar year following graduation (or bar admission), the attorney will have 1 year of experience. (For example, an attorney who graduated from law school on May 30 will have 0 years of experience until December 31 of that same calendar year.  As of January 1, all work charged will be computed as performed by an attorney with 1 year of experience.)  Adjustments may be necessary if an attorney did not follow a typical career progression or was effectively performing law clerk work.  *See, e.g., EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate).

5.  The data for this matrix was gathered from the dockets of cases litigated in the U.S. District Court for the District of Columbia using the following search in Bloomberg Law: keywords ("motion n/5 fees AND attorney!" under "Dockets Only") + filing type ("brief," "motion," or "order") + date ("May 31, 2013 – May 31, 2020" under "Entries (Docket Key Only)").  This returned a list of 781 cases.  Of those, cases were excluded if there was no motion for fees filed, the motions for fees lacked necessary information, or the motions involved fees not based on hourly rates, involved rates explicitly or implicitly based on an existing fee matrix, involved rates explicitly or implicitly subject to statutory fee caps (e.g., cases subject to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)), or used lower rates prescribed by case law (*e.g., Eley*, 793 F.3d at 105 (Individuals with Disabilities in Education Act

cases)).  After these excisions, 86 cases, many of which included data for multiple billers (and 2 of which only provided hourly rate data for paralegals), remained.

6.  The cases used to generate this matrix constitute complex federal litigation—which caselaw establishes as encompassing a broad range of matters tried in federal court.  *E.g.*, *Reed v. District of Columbia*, 843 F.3d 517, 527-29 (D.C. Cir. 2016) (Tatel, J., concurring) (noting that cases arising under the Freedom of Information Act, Title VII, the Americans with Disabilities Act, Constitutional Amendments, antitrust statutes, and others have been deemed complex, and even "relatively small" cases can constitute complex federal litigation, as they too require "specialized legal skills" and can involve "complex organizations," such as "large companies"); *Miller v. Holzmann*, 575 F. Supp. 2d 2, 14-16, 17 (D.D.C. 2008) (prevailing market rates for complex federal litigation should be determined by looking to "a diverse range of cases").  That the attorneys handling these cases asked the court to award the specified rates itself demonstrates that the rates were "'adequate to attract competent counsel, [while] not produc[ing] windfalls to attorneys.'"  *West v. Potter*, 717 F.3d 1030, 1033 (D.C. Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  As a consequence, the resulting analysis yields the "prevailing market rate[] in the relevant community" for complex litigation undertaken in federal courts in the District of Columbia.  *See Blum*, 465 U.S. at 895.

7.  From these 86 complex federal cases, the following information was recorded for 2013 and beyond: hourly rate, the calendar year the rate was charged, and the number of years the lawyer was out of law school when the rate was charged (or, if law school graduation year was unavailable, years since bar passage), as defined above.  If the graduation or bar passage year was not stated in a motion or its exhibits, then the lawyer's biography was researched on the internet.  Although preexisting fee matrices for the District of Columbia provide for mid-year rate changes, very few lawyers in the data submitted rates that changed within a calendar year.  For this reason, the matrix was modeled using one rate for each calendar year.  On the occasions when a lawyer expressed an hourly rate as a range or indicated the rate had increased during the year, the midpoint of the two rates was recorded for that lawyer-year.

8.  The matrix of attorney rates is based on 675 lawyer-year data points (one data point for each year in which a lawyer charged an hourly rate) from 419 unique lawyers from 84 unique cases.  The lawyer-year data points spanned from years 2013 to 2020, from $100 to $1250, and from less than one year of experience to 58 years.

9.  Paralegal/law clerk rates were also recorded.  The following titles in the fee motions were included in the paralegal/law clerk data: law clerk, legal assistant, paralegal, senior legal assistant, senior paralegal, and student clerk.  The paralegal/law clerk row is based on 108 paralegal-year data points from 42 unique cases.  They spanned from 2013 to 2019 and from $60 to $290.  (It is unclear how many unique persons are in the 108 data points because paralegals were not always identified by name.)

10. The matrix was created with separate regressions for the lawyer data and the paralegal data.  For the paralegal data, simple linear least-squares regression was used with the dependent variable hourly rate and the independent variable the year the rate was charged subtracted from 2013; years were

combined into one variable and subtracted from 2013 rather than modeled as separate indicator variables to constrain annual inflation to a constant, positive number. The resulting regression formula was rate = 129.8789 + 9.902107 * (year-2013). For the lawyer data, least-squares regression was used with the dependent variable hourly rate and independent variables the year the rate was charged and the number of years of experience of the lawyer when the rate was charged. The year the rate was charged was subtracted from 2013 and modeled linearly as with the paralegal data. The number of years out of law school (or since year of bar passage) was modeled with both linear and squared terms, as is common in labor economics to account for non-linear wage growth (e.g., faster growth earlier in one's career than at the end of one's career). *See, e.g.*, Jacob Mincer, *Schooling, Experience, and Earnings* (1974). The resulting regression formula was rate = 227.319 + 16.54492 * experience - 0.2216217 * experience ^ 2 + 27.97634 * (year-2013). Regressions were also run with log transformed rates and with a random-effect model (to account for several lawyers appearing more than once in the data), but both alternatives resulted in mostly lower rates than those reflected here; in order to minimize fee disputes, these models were therefore rejected in favor of the more generous untransformed, fixed-effect model. Rates from one case comprised 20% of the data; the regression was also run without that case, but the resulting rates were mostly lower and therefore rejected, again to minimize fee disputes.

11. The data collected for this matrix runs through 2020. To generate rates in 2021, an inflation adjustment (rounded to the nearest whole dollar) was added. The United States Attorney's Office determined that, because courts and many parties have employed the legal services index of the Consumer Price Index to adjust attorney hourly rates for inflation, this matrix will do likewise. *E.g.*, *Salazar v. District of Columbia*, 809 F.3d 58, 64-65 (D.C. Cir. 2015); *Eley*, 793 F.3d at 101-02; *DL*, 924 F.3d at 589-90.

12. This matrix was researched and prepared by Brian Fitzpatrick, the Milton R. Underwood Chair in Free Enterprise and Professor of Law at Vanderbilt Law School, with the help of his students.

**McCollough Declaration Attachment C**

# Databases, Tables & Calculators by Subject

**Change Output Options:**    From: 1996 ▾  To: 2021 ▾  **GO**

☐ include graphs  ☑ include annual averages    **More Formatting Options** ➡

Data extracted on: December 13, 2021 (12:01:55 PM)

**CPI for All Urban Consumers (CPI-U)**

**Series Id:**  CUURS35ASA0
Not Seasonally Adjusted
**Series Title:**  All items in Washington-Arlington-Alexandria, DC-VA-MD-WV, all urban consumers, not seasonally adjusted
**Area:**  Washington-Arlington-Alexandria, DC-VA-MD-WV
**Item:**  All items
**Base Period:**  1982-84=100

**Download:** ⬇ xlsx

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Annual | HALF1 | HALF2 |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|--------|-------|-------|
| **1996** | 156.8 | | 158.4 | | 159.0 | | 160.1 | | 160.8 | | 161.2 | | 159.6 | 158.3 | 160.8 |
| **1997** | 161.6 | | 161.9 | | 162.1 | | 162.9 | | 163.6 | | 161.8 | | 162.4 | 162.0 | 162.8 |
| **1998** | 162.5 | | 163.5 | | 163.6 | | 164.9 | | 165.2 | | 164.5 | | | | |
| **1999** | 165.4 | | 165.9 | | 167.0 | | 168.3 | | 169.8 | | 169.1 | | | | |
| **2000** | 169.8 | | 173.2 | | 172.5 | | 174.8 | | 175.0 | | 175.3 | | | | |
| **2001** | 175.9 | | 177.2 | | 178.0 | | 179.2 | | 180.9 | | 179.5 | | | | |
| **2002** | 180.0 | | 181.9 | | 183.6 | | 184.2 | | 185.8 | | 185.4 | | | | |
| **2003** | 186.3 | | 188.8 | | 188.7 | | 190.2 | | 190.8 | | 190.4 | | | | |
| **2004** | 190.7 | | 192.8 | | 194.1 | | 195.4 | | 196.5 | | 197.2 | | | | |
| **2005** | 198.2 | | 200.4 | | 201.8 | | 202.8 | | 205.6 | | 204.3 | | | | |
| **2006** | 205.6 | | 206.4 | | 209.1 | | 211.4 | | 211.2 | | 210.1 | | | | |
| **2007** | 211.101 | | 214.455 | | 216.097 | | 217.198 | | 218.457 | | 218.331 | | | | |
| **2008** | 220.587 | | 222.554 | | 224.525 | | 228.918 | | 228.871 | | 223.569 | | | | |
| **2009** | 221.830 | | 222.630 | | 223.583 | | 226.084 | | 227.181 | | 226.533 | | | | |
| **2010** | 227.440 | | 228.480 | | 228.628 | | 228.432 | | 230.612 | | 230.531 | | | | |
| **2011** | 232.770 | | 235.182 | | 237.348 | | 238.191 | | 238.725 | | 238.175 | | | | |
| **2012** | 238.994 | | 242.235 | | 242.446 | | 241.744 | | 244.720 | | 243.199 | | | | |
| **2013** | 243.473 | | 245.477 | | 245.499 | | 246.178 | | 247.838 | | 247.264 | | | | |
| **2014** | 247.679 | | 249.591 | | 250.443 | | 250.326 | | 250.634 | | 249.972 | | | | |
| **2015** | 247.127 | | 249.985 | | 251.825 | | 250.992 | | 252.376 | | 251.327 | | 250.664 | 249.828 | 251.500 |
| **2016** | 250.807 | | 252.718 | | 254.850 | | 254.305 | | 253.513 | | 253.989 | | 253.422 | 253.049 | 253.795 |
| **2017** | 254.495 | | 255.435 | | 255.502 | | 255.518 | | 257.816 | | 257.872 | | 256.221 | 255.332 | 257.110 |
| **2018** | 260.219 | | 260.026 | | 261.770 | | 262.016 | | 263.056 | | 261.120 | | 261.445 | 260.903 | 261.987 |
| **2019** | 262.304 | | 264.257 | | 265.967 | | 265.170 | | 265.500 | | 265.026 | | 264.777 | 264.252 | 265.301 |
| **2020** | 266.433 | | 265.385 | | 265.733 | | 267.287 | | 268.788 | | 268.700 | | 267.157 | 265.954 | 268.359 |
| **2021** | 270.535 | | 272.347 | | 275.822 | | 279.099 | | 280.933 | | 284.240 | | | 273.603 | |

U.S. BUREAU OF LABOR STATISTICS  Postal Square Building   2 Massachusetts Avenue NE   Washington, DC 20212-0001

Telephone:1-202-691-5200_  Federal Relay Service:1-800-877-8339_  www.bls.gov   Contact Us

**McCollough Declaration Attachment D**

| Date | Biller | Description | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
|  | **Biller - W. Scott McCollough (Attorney) (WSM)** ||||||
|  | 2020 ||||||
| 1/17/2020 | WSM | Conv w/ client re case planning and scheduling; initial research on standing issues of potential petitioners | 1.0 | $214.48 | $214.48 |
| 1/17/2020 | WSM | Initial research on standing issues of potential petitioners | 0.6 | $214.48 | $128.69 |
| 1/19/2020 | WSM | Standing and other research | 0.4 | $214.48 | $85.79 |
| 1/19/2020 | WSM | Conv w/ client and potential petitioner | 0.3 | $214.48 | $64.34 |
| 1/19/2020 | WSM | Deep dive into order to identify issues | 1.0 | $214.48 | $214.48 |
| 1/19/2020 | WSM | Start PFR template | 0.5 | $214.48 | $107.24 |
| 1/20/2020 | WSM | Conv w/ client and more potential petitioners | 1.2 | $214.48 | $257.38 |
| 1/20/2020 | WSM | Continue reading order and 2013 NOI | 2.0 | $214.48 | $428.96 |
| 1/20/2020 | WSM | Research cases on various potential issues | 2.2 | $214.48 | $471.86 |
| 1/20/2021 | WSM | Update status of cities' 9th Circuit case | 0.3 | $214.48 | $64.34 |
| 1/20/2021 | WSM | Finish and send PFR template to client | 0.3 | $214.48 | $64.34 |
| 1/21/2020 | WSM | Continue issues research; update client and send questions | 2.0 | $214.48 | $428.96 |
| 1/22/2020 | WSM | Research on Hobbs Act "aggrieved party" requirements for commenting parties; re-review FCC comments by various participants and identify potential issues | 3.0 | $214.48 | $643.44 |
| 1/23/2020 | WSM | Conv w/ client re task allocation and strategy | 0.9 | $214.48 | $193.03 |
| 1/23/2020 | WSM | Further develop strategy then make edits to draft PFR and issue/brief outline | 3.0 | $214.48 | $643.44 |
| 1/24/2020 | WSM | Prepare recommendation for client on petitioners and organizational alignment | 0.5 | $214.48 | $107.24 |
| 1/24/2020 | WSM | Add corporate disclosure statement to PFR | 0.3 | $214.48 | $64.34 |
| 1/24/2020 | WSM | Research on basis for organization to separately claim Art. III standing | 2.0 | $214.48 | $428.96 |
| 1/26/2020 | WSM | Work on affidavit templates | 0.5 | $214.48 | $107.24 |
| 1/26/2020 | WSM | Review client supplied materials and do followup research and analysis then report back with response on standing and substantive issues | 0.9 | $214.48 | $193.03 |
| 1/26/2020 | WSM | Go back through FCC comments to locate filings addressing discrete issues | 1.6 | $214.48 | $343.17 |
| 1/26/2020 | WSM | Read comments by potential petitioners or organization members | 0.8 | $214.48 | $171.58 |
| 1/26/2020 | WSM | Pull affidavits from 9th Cir. Greenlining case to find deficiencies identified by the court | 0.3 | $214.48 | $64.34 |
| 1/26/2020 | WSM | Conf call with potential petitioner | 0.2 | $214.48 | $42.90 |
| 1/27/2020 | WSM | Draft engagement letter for individual petitioners; multiple convs w/ client | 2.4 | $214.48 | $514.75 |
| 1/28/2020 | WSM | Edit PFR; fill in names/addresses | 0.8 | $214.48 | $171.58 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| 1/28/2021 | WSM | Send PFR edits with names and addresses added to client; conv w/ client | 0.8 | $214.48 | $171.58 |
| 1/29/2020 | WSM | Continue with PFR | 0.7 | $214.48 | $150.14 |
| 1/29/2020 | WSM | Convs w/ multiple clients re status and process | 3.3 | $214.48 | $707.78 |
| 1/30/2020 | WSM | Further edits to PFR | 0.7 | $214.48 | $150.14 |
| 1/30/2020 | WSM | Discussion w/ clients regarding named plaintiffs or part of organizational standing | 0.7 | $214.48 | $150.14 |
| 1/31/2020 | WSM | Semi-final edits to PFR; send to client | 2.0 | $214.48 | $428.96 |
| 2/1/2020 | WSM | Work with client to reach PFR final clean; distribute | 1.0 | $214.48 | $214.48 |
| 2/2/2020 | WSM | Finish and upload PFR to 9th Circuit (new agency case with fee) | 2.0 | $214.48 | $428.96 |
| 2/3/2020 | WSM | Conv w/ client re PFR, other PFRs and what happens from here | 0.8 | $214.48 | $171.58 |
| 2/5/2020 | WSM | Start client instruction package for standing showing; send then cloud share with clients | 3.2 | $214.48 | $686.34 |
| 2/6/2020 | WSM | Hobbs Act research - premature and cure | 0.5 | $214.48 | $107.24 |
| 2/6/2020 | WSM | Research on scope of review for NOI | 2.0 | $214.48 | $428.96 |
| 2/6/2020 | WSM | Fill out 9th Cir mediation questionairre for Monday filing | 0.5 | $214.48 | $107.24 |
| 2/7/2020 | WSM | Conv w/ client re all upcoming tasks and strategy | 0.7 | $214.48 | $150.14 |
| 2/8/2020 | WSM | Conv w/ client re strategy | 0.3 | $214.48 | $64.34 |
| 2/8/2020 | WSM | Upload Mediation Questionairre to 9th Cir. ECF | 0.2 | $214.48 | $42.90 |
| 2/10/2020 | WSM | Review FDA determination, research FDA organization and jurisdictional issues and determine strategy re same | 1.5 | $214.48 | $321.72 |
| 2/17/2020 | WSM | Resume working on standing affidavit needs | 1.0 | $214.48 | $214.48 |
| 2/17/2020 | WSM | Start outlining potential additional legal arguments (delegation, APA) | 0.8 | $214.48 | $171.58 |
| 2/17/2020 | WSM | Pull down and read all past FCC orders on RF emissions rule starting in 1972 | 3.4 | $214.48 | $729.23 |
| 2/24/2020 | WSM | Review Mary Adkins Affidavit | 1.0 | $214.48 | $214.48 |
| 2/24/2020 | WSM | Convs w/ client re Standing necessaries and outlines | 0.3 | $214.48 | $64.34 |
| 2/25/2020 | WSM | Review Adkins and McMahon Affidavits and exhibits; convs w/ client re same and further requirements | 3.6 | $214.48 | $772.13 |
| 2/28/2020 | WSM | Convs w/ client re additional standing affidavit requirements | 1.3 | $214.48 | $278.82 |
| 3/1/2020 | WSM | Convs w/ client; review affidavits and send comments to clients | 3.0 | $214.48 | $643.44 |
| 3/2/2020 | WSM | Review additional affidavits | 3.0 | $214.48 | $643.44 |
| 3/3/2020 | WSM | Conv w/ client re status | 0.2 | $214.48 | $42.90 |
| 3/4/2020 | WSM | Finish Stanley and Dart affidavit review and send comments to clients | 4.0 | $214.48 | $857.92 |
| 3/5/2020 | WSM | Review Stanley, Gallo, Farver, Morrison affidavits and comment; convs w/ client | 2.8 | $214.48 | $600.54 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| 3/6/2020 | WSM | Review revised Farver and Morrison affidavits and send comments to client | 2.8 | $214.48 | $600.54 |
| 3/6/2020 | WSM | Download EHT filings in DC Cir. for analysis and transmittal to client with comments | 1.2 | $214.48 | $257.38 |
| 3/7/2020 | WSM | Review Gallo affidavit; send comments to client | 3.0 | $214.48 | $643.44 |
| 3/8/2020 | WSM | Gallo and Morrison affidavit review after client edits then send comments to clients | 1.8 | $214.48 | $386.06 |
| 3/9/2020 | WSM | Adkins, Hertz and Farver Affidavit review; convs w/ clients re same | 4.2 | $214.48 | $900.82 |
| 3/11/2020 | WSM | Receive Adkins second set of hard and soft copy documents; begin reviewing and commenting on current affidavit text | 1.2 | $214.48 | $257.38 |
| 3/12/2020 | WSM | Convs w/ client; continue with affidavits | 1.0 | $214.48 | $214.48 |
| 3/15/2020 | WSM | Finish final review of Adkins affidavit and send comments to witness | 2.0 | $214.48 | $428.96 |
| 3/16/2020 | WSM | Continue with latest affidavit edit rounds; Baran; Jelter; Gallo; help fill record cites | 3.0 | $214.48 | $643.44 |
| 3/17/2020 | WSM | Review Jelter affidavit; help fill holes; send comments | 1.8 | $214.48 | $386.06 |
| 3/18/2020 | WSM | Review Adkins, Baran and Dart affidavits and send comments back to clients | 3.0 | $214.48 | $643.44 |
| 3/20/2020 | WSM | Finish Adkins affidavit rewrite and send comments to witness | 1.5 | $214.48 | $321.72 |
| 3/23/2020 | WSM | Download and analyze FCC Record Index filing in DC Cir; conv w/ client w/ report | 1.0 | $214.48 | $214.48 |
| 3/29/1930 | WSM | Final review Adkins, Ann Lee and David Morrison affidavits | 1.5 | $214.48 | $321.72 |
| 3/31/2020 | WSM | Find and forward advance FR publication notice of FCC RF order; explain meaning and process going forward to client; start amended PFR | 2.5 | $214.48 | $536.20 |
| 4/1/2020 | WSM | Pull down formal FedReg publication; work on supplemental PFR | 2.3 | $214.48 | $493.30 |
| 4/1/2020 | WSM | Get affidavits (Hertz, Tsiang, Baran) in final form | 1.7 | $214.48 | $364.62 |
| 4/2/2020 | WSM | Work on Adkins affidavit | 1.0 | $214.48 | $214.48 |
| 4/2/2020 | WSM | Edit/Finish Supplemental PFR and receive client input; upload to ECF; serve FCC by email; | 2.8 | $214.48 | $600.54 |
| 4/6/2020 | WSM | Check EHT case for any recent filings and status ; report to client | 0.3 | $214.48 | $64.34 |
| 4/6/2020 | WSM | Re-send email to FCC GC seeking acknowledgement of service | 0.1 | $214.48 | $21.45 |
| 4/9/2020 | WSM | Prepare briefing template and start inserting text on base topics; send to client | 2.8 | $214.48 | $600.54 |
| 4/10/2020 | WSM | Draft brief boilerplate material | 1.0 | $214.48 | $214.48 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|------|--------|-------------|--------------|------|-------|
| 4/11/2020 | WSM | Conv w/ client re assignment of briefing tasks and status; draft tasking memo on ECFS search method and search terms | 0.6 | $214.48 | $128.69 |
| 4/11/2020 | WSM | Draft tasking memo on ECFS search method and search terms | 0.6 | $214.48 | $128.69 |
| 4/12/2020 | WSM | Call w/ client team re ECFS search for brief/record items; allocate search terms into categories and distribute; comment on preliminary analytical/results spreadsheet template | 1.6 | $214.48 | $343.17 |
| 4/12/2020 | WSM | Continue working on background and history portion of brief | 3.5 | $214.48 | $750.68 |
| 4/13/2020 | WSM | Finish review of Brokken, Dart and Lee affidavits | 1.5 | $214.48 | $321.72 |
| 4/18/2020 | WSM | Continue on basic briefing contents | 1.2 | $214.48 | $257.38 |
| 4/18/2020 | WSM | Discuss affidavits and briefing status | 0.4 | $214.48 | $85.79 |
| 4/20/2020 | WSM | Discussion with client experts re OET 56 and 65 | 1.0 | $214.48 | $214.48 |
| 4/20/2020 | WSM | Work on brief; identify potential procedural issues | 2.5 | $214.48 | $536.20 |
| 4/22/2020 | WSM | Research precautionary principle; review comments at FCC on issue and review DC Cir precedent | 1.5 | $214.48 | $321.72 |
| 4/23/2020 | WSM | Locate FDA policy and rules for extrapolation from animal studies to effects on humans; add results to brief | 3.5 | $214.48 | $750.68 |
| 4/24/2020 | WSM | Continue finding/pulling cases and adding to brief in appropriate topic areas with discussion/analysis | 3.2 | $214.48 | $686.34 |
| 4/24/2020 | WSM | Briefing and analysis - science and biological response | 2.3 | $214.48 | $493.30 |
| 4/25/2020 | WSM | Discuss case status and receive directions on DC Cir case consolidation, timing, briefing and cooperation with EHT | 0.7 | $214.48 | $150.14 |
| 4/24/2020 | WSM | Return to brief drafting | 2.0 | $214.48 | $428.96 |
| 4/27/2020 | WSM | Conf call w/ EHT counsel re consolidation, scheduling and briefing; report to client; compose email on potential meeting with EHT | 1.0 | $214.48 | $214.48 |
| 4/28/2020 | WSM | Conv w/ client; final affidavit comments to Dart and Farver | 1.8 | $214.48 | $386.06 |
| 4/29/2020 | WSM | Continue with final work on affidavits | 2.0 | $214.48 | $428.96 |
| 4/29/2020 | WSM | Work on issue splitting with EHT | 0.5 | $214.48 | $107.24 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|------|--------|-------------|--------------|------|-------|
| 4/30/2020 | WSM | Prepare initial filings (docketing statement, deferred appendix statement; statement of parties, rulings and cases; preliminary statement of issues); create Case Caption for our own Case No. filings | 3.0 | $214.48 | $643.44 |
| 5/1/2020 | WSM | Final review current affidavits before execution | 0.6 | $214.48 | $128.69 |
| 5/1/2020 | WSM | Conv w/ EHT and FCC counsel re consolidated case schedule | 0.5 | $214.48 | $107.24 |
| 5/1/2020 | WSM | Continue on initial procedural filings | 1.8 | $214.48 | $386.06 |
| 5/4/2020 | WSM | Convs w/ FCC and EHT counsel and w/ DC Cir Clerk re events and scheduling; draft motion to amend schedule | 1.2 | $214.48 | $257.38 |
| 5/4/2020 | WSM | Convs w/ client; further map out briefing issues | 0.4 | $214.48 | $85.79 |
| 5/4/2020 | WSM | Research potential new point of error (FCC relied on non-record evidence) and incorporate into briefing template | 1.4 | $214.48 | $300.27 |
| 5/5/2020 | WSM | Conv w/ EHT counsel; work on briefing organization; conv w/ client; work on table of issues for splitting between EHT/CHD and send to client for markup | 3.2 | $214.48 | $686.34 |
| 5/6/2020 | WSM | Finish table of issues and proposed CHD/EHT allocation then send to EHT | 0.5 | $214.48 | $107.24 |
| 5/6/2020 | WSM | Finish and file motion to amend schedule | 0.7 | $214.48 | $150.14 |
| 5/7/2020 | WSM | Conv w/ client; do explainer on how briefing works in DC Cir and provide example | 0.5 | $214.48 | $107.24 |
| 5/7/2020 | WSM | Finish Adkins affidavit and send to witness for execution and return | 0.3 | $214.48 | $64.34 |
| 5/7/2020 | WSM | Receive Elliott and Morrison executed affidavits, scan and OCR then send copy to client | 0.2 | $214.48 | $42.90 |
| 5/8/2020 | WSM | Deal with CHD/EHT briefing allocation issues; review EHT proposal and draft response; multiple conversations and email exchanges with client over same | 4.0 | $214.48 | $857.92 |
| 5/11/2020 | WSM | Work on inter-petitioner issues; convs w/ client; go into brief template and begin organization and issue statement consistent with tentative issue division and current theory of case; send to client; calls to prepare for 5/12 substantive call with EHT | 3.2 | $214.48 | $686.34 |
| 5/12/2020 | WSM | Prepare for and do conf call w/ EHT; report to client; draft follow up email to EHT counsel | 1.5 | $214.48 | $321.72 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| 5/13/2020 | WSM | Follow up conf call w/ EHT re issue allocation and brief milestones; memorialize same; implement results into task table and distribute; review proposed brief outline and send comments; pull case on sub-delegation and send to EHT | 1.2 | $214.48 | $257.38 |
| 5/13/2020 | WSM | Identify best contextual precedent on examples of arbitrary/capricious/abuse of discretion/substantial evidence | 2.0 | $214.48 | $428.96 |
| 5/15/2020 | WSM | Draft email to EHT counsel for client review and approval | 0.2 | $214.48 | $42.90 |
| 5/16/2020 | WSM | Update issue allocation table; assign substantial evidence/agency record research to Paralegal | 1.1 | $214.48 | $235.93 |
| 5/16/2020 | WSM | Provide client primer on Ad law principles regarding arbitrary/capricious/abuse of discretion/substantial evidence/reasoned decisionmaking | 2.9 | $214.48 | $621.99 |
| 5/17/2020 | WSM | Finish emails to EHT counsel and send to client for approval; receive instructions and send | 0.7 | $214.48 | $150.14 |
| 5/17/2020 | WSM | Work on agency record reseach coordination and review current internal results for brief writing on CHD-assigned issues | 2.3 | $214.48 | $493.30 |
| 5/18/2020 | WSM | Finish CHD insert for Standard of Review in brief and send to EHT | 0.4 | $214.48 | $85.79 |
| 5/18/2020 | WSM | Work on CHD-assigned briefing issues - bring in prior work product | 3.0 | $214.48 | $643.44 |
| 5/19/2020 | WSM | Coordinate and continue work on FCC emissions science and history | 1.9 | $214.48 | $407.51 |
| 5/19/2020 | WSM | Communicate w/ EHT counsel on briefing case and record citation conventions | 0.2 | $214.48 | $42.90 |
| 5/27/2020 | WSM | Work on briefing; research/shepardize ComAct decisions | 1.3 | $214.48 | $278.82 |
| 5/27/2020 | WSM | Help client with science portion write-up | 1.8 | $214.48 | $386.06 |
| 5/27/2020 | WSM | Start review of Carpenter affidavit draft | 1.0 | $214.48 | $214.48 |
| 5/29/2020 | WSM | Continue Carpenter affidavit review; send to legal assistant for grammar and language and organization suggestions | 1.5 | $214.48 | $321.72 |
| 6/3/2020 | WSM | Do Zoom call with all Petitioners; post conf conv w/ client re same and brief status/planning | 1.8 | $214.48 | $386.06 |
| 6/4/2020 | WSM | Organize and finalize executed affidavits; review client affidavit | 2.3 | $214.48 | $493.30 |
| 6/4/2020 | WSM | Conf call with email from EHT counsel | 0.4 | $214.48 | $85.79 |
| 6/4/2020 | WSM | Work on brief - CHD-assigned issues | 3.1 | $214.48 | $664.89 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|------|--------|-------------|--------------|------|-------|
| 6/5/2020 | WSM | Convs w/ EHT counsel re schedule and brief word limit; conv w/ FCC counsel re same; report to client | 1.5 | $214.48 | $321.72 |
| 6/5/2020 | WSM | Finish review/edit client affidavit | 3.3 | $214.48 | $707.78 |
| 6/6/2020 | WSM | Draft request for 2nd extension and send to EHT counsel for review | 0.7 | $214.48 | $150.14 |
| 6/6/2020 | WSM | Work on Carpenter affidavit and merits brief | 3.3 | $214.48 | $707.78 |
| 6/7/2020 | WSM | Finish and circulate 2nd extension draft; review EHT-drafted word expansion motion | 1.0 | $214.48 | $214.48 |
| 6/7/2020 | WSM | Continue with Carpenter affidavit and merits brief | 5.0 | $214.48 | $1,072.40 |
| 6/8/2020 | WSM | Negotiate and secure 2nd extension agreement, then file; participate in word expansion motion discussions | 1.0 | $214.48 | $214.48 |
| 6/8/2020 | WSM | Continue with Carpenter affidavit and merits brief | 4.5 | $214.48 | $965.16 |
| 6/10/2020 | WSM | Start editing/adding to brief Standing argument | 2.8 | $214.48 | $600.54 |
| 6/11/2020 | WSM | Continue w/ Standing argument; work on statutory claims piece | 4.8 | $214.48 | $1,029.50 |
| 6/13/2020 | WSM | Integrate all briefing topics into agreed outline; do edits; further research on specific issues and include findings; begin reorganization | 5.2 | $214.48 | $1,115.30 |
| 6/15/2020 | WSM | Begin integrating client-supplied microwave sickness document into template and statement of the case; find cases and citations to authority | 4.0 | $214.48 | $857.92 |
| 6/16/2020 | WSM | Continue integrating client-supplied document into statement of the case with edits and size reductions; merge other case statement portions then drop into EHT outline; begin editing for consistent terminology. Send to client as status update | 5.5 | $214.48 | $1,179.64 |
| 6/17/2020 | WSM | Continue with briefing; do more topic inserts; edit; locate record citations and count number of comments on various topics | 3.5 | $214.48 | $750.68 |
| 6/18/2020 | WSM | Review DACA opinion for overlapping APA issues; continue editing brief | 4.0 | $214.48 | $857.92 |
| 6/19/2020 | WSM | Continue working on brief; integrating new parts from client; editing; finding record and case citations | 3.0 | $214.48 | $643.44 |
| 6/20/2020 | WSM | Another brief editing round to cut words | 2.0 | $214.48 | $428.96 |
| 6/22/2020 | WSM | Finish reorganized Carpenter review and send comments to client; add more record citations to brief | 2.2 | $214.48 | $471.86 |
| 6/23/2020 | WSM | Conv w/ client; corresp w/ EHT counsel re allocation of additional tasks (rule history, glossary); work on various parts of brief | 2.8 | $214.48 | $600.54 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| 6/23/2020 | WSM | Convs w/ client re brief; continue work on CHD-assigned portions | 1.0 | $214.48 | $214.48 |
| 6/25/2020 | WSM | Grammar check brief; deep rhetorical style editing | 1.5 | $214.48 | $321.72 |
| 6/27/2020 | WSM | Convs w/ client re glossary, foreign decisions, overall status; work on briefing issues and organization, continued editing | 2.5 | $214.48 | $536.20 |
| 6/29/2020 | WSM | Work on doctors' standing argument after review latest S.Ct. decision on 3rd party standing; continue editing brief based on recent strategic decisions and ongoing research; continue grammar/word count scrub | 3.0 | $214.48 | $643.44 |
| 6/30/2020 | WSM | Edit client supplied ICNIRP material; prepare to insert in brief; convs w/ client re various issues | 3.8 | $214.48 | $815.02 |
| 7/1/2020 | WSM | Conv w/ court clerk re schedule/volume motions; report to client; discuss briefing status and timing | 0.7 | $214.48 | $150.14 |
| 7/1/2020 | WSM | Read new court case on standing and incorporate into brief; continue inserting client-supplied material in brief | 3.8 | $214.48 | $815.02 |
| 7/2/2020 | WSM | Review scheduling/volume order and calendar; report to client | 0.3 | $214.48 | $64.34 |
| 7/2/2020 | WSM | Tighten argument on lack of reasoned decisionmaking | 1.7 | $214.48 | $364.62 |
| 7/3/2020 | WSM | Coordinate with client and EHT counsel on planning | 0.4 | $214.48 | $85.79 |
| 7/3/2020 | WSM | Work on brief | 5.6 | $214.48 | $1,201.09 |
| 7/4/2020 | WSM | Continue working on brief | 3.8 | $214.48 | $815.02 |
| 7/5/2020 | WSM | Insert client-supplied mechanism of harm discussion; fill citation holes | 2.0 | $214.48 | $428.96 |
| 7/6/2020 | WSM | Continue working on brief | 3.0 | $214.48 | $643.44 |
| 7/7/2020 | WSM | Continue inserting more client-supplied material into brief; work on professional injury standing portion | 6.0 | $214.48 | $1,286.88 |
| 7/8/2020 | WSM | Merge client-supplied and self-generated technical discussion and rule description; convs w/ client; start moving client edits into brief; conceive how to reorg all material | 5.8 | $214.48 | $1,243.98 |
| 7/9/2020 | WSM | Finish merger and do reorg with further edits; send link to client | 7.0 | $214.48 | $1,501.36 |
| 7/10/2020 | WSM | Continue editing; collaborative editing/drafting work w/ client on technical concepts; further reorg | 6.0 | $214.48 | $1,286.88 |
| 7/11/2020 | WSM | Conv w/ client; continue editing; research terminology and linguistics differences between scientists and FCC engineers/rules/decisions | 3.2 | $214.48 | $686.34 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| 7/12/2020 | WSM | Conv w/ engineer expert; conv w/ client; rework narrative; continue editing brief; find FCC statutory authority over EMF (as distinguished from RF) | 2.5 | $214.48 | $536.20 |
| 7/13/2020 | WSM | Do another merger of client product; finish backend; convs w/ client | 10.0 | $214.48 | $2,144.80 |
| 7/14/2020 | WSM | Finish draft and prepare for transmittal to EHT; convs w/ client; receive other petitioners' draft and start initial review | 3.8 | $214.48 | $815.02 |
| 7/15/2020 | WSM | Conv w/ client; review other petitioners' drafts; conv w/ engineering expert | 2.0 | $214.48 | $428.96 |
| 7/16/2020 | WSM | Conf w/ all petitioner counsel; convs w/ client; begin suggested breakout of our brief into overall combined brief organization | 3.0 | $214.48 | $643.44 |
| 7/20/2020 | WSM | Receive consolidated brief from other petitioners' counsel; begin review and edit | 1.8 | $214.48 | $386.06 |
| 7/21/2020 | WSM | Work on editing consolidated brief; locate redundant parts, move, cut 4,200 words; convs w/ client and EHT counsel | 8.0 | $214.48 | $1,715.84 |
| 7/22/2020 | WSM | Continue edits and make significant volume reductions; convs w/ client and EHT counsel re brief | 7.8 | $214.48 | $1,672.94 |
| 7/23/2020 | WSM | Finish CHD edits and send to other petitioners' counsel; review client edits and merge; convs w/ client | 6.0 | $214.48 | $1,286.88 |
| 7/24/2020 | WSM | Start negotiations for merged brief; edit sections and agree to others | 5.2 | $214.48 | $1,115.30 |
| 7/24/2020 | WSM | Review DT affidavit and send edits/comments | 2.8 | $214.48 | $600.54 |
| 7/25/2020 | WSM | Negotiate additional brief portions; do next round of edits to each of our sections for volume reduction; start editing legal section for volume reduction; convs w/ client | 12.0 | $214.48 | $2,573.76 |
| 7/26/2020 | WSM | Continue negotiating final language; receive input from client; pass on proposed edits to EHT; edit our own language for further reductions | 12.0 | $214.48 | $2,573.76 |
| 7/27/2020 | WSM | Establish path forward given volume requirements; begin edits to new master - submit serial edits; convs w/ client | 5.5 | $214.48 | $1,179.64 |
| 7/27/2020 | WSM | Work on affidavits | 1.5 | $214.48 | $321.72 |
| 7/28/2020 - 7/29/2020 | WSM | Work straight through 8 am 7/28 - 11 pm 7/29; finish brief, including addendum and standing materials; convs w/client and EHT; final drafting and approval (39 hours total charge only 24) | 24.0 | $214.48 | $5,147.52 |
| 7/30/2020 | WSM | Review filed brief and send conclusions to client | 1.5 | $214.48 | $321.72 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| 8/1/2020 | WSM | Implement brief error correction from 3 sources; send to client | 3.0 | $214.48 | $643.44 |
| 8/3/2020 | WSM | Review Clerk Acronyms letter; convs w/ client and EHT | 0.5 | $214.48 | $107.24 |
| 8/4/2020 | WSM | Conv w/ EHT re corrected brief; report to client | 0.6 | $214.48 | $128.69 |
| 8/5/2020 | WSM | Continue efforts to make error corrections; convs w/ client; finish document and send to other petitioners with note | 4.2 | $214.48 | $900.82 |
| 8/5/2020 | WSM | Edit URL spreadsheet for FCC and send to client | 1.3 | $214.48 | $278.82 |
| 8/6/2020 | WSM | Continue efforts to make error corrections; convs w/ client; conv w/ other petitioners | 2.0 | $214.48 | $428.96 |
| 8/12/2020 | WSM | Work on corrected brief; convs w/ client and other petitioners | 4.0 | $214.48 | $857.92 |
| 8/13/2020 | WSM | Finish corrected brief and URL Table; send to other petitioners, client and FCC for review | 3.2 | $214.48 | $686.34 |
| 8/17/2020 | WSM | Negotiate revised briefing schedule | 0.2 | $214.48 | $42.90 |
| 9/2/2020 | WSM | Work with client on JA material compilation and creation/ordering | 1.2 | $214.48 | $257.38 |
| 9/10/2020 | WSM | Develop proposed timeline for remaining activities for client comment and ultimate exchange with EHT | 1.0 | $214.48 | $214.48 |
| 9/14/2020 | WSM | Convs w/ client and conv w/ EHT counsel re reply briefing | 1.2 | $214.48 | $257.38 |
| 9/17/2020 | WSM | Work on JA development issues | 1.8 | $214.48 | $386.06 |
| 9/21/2020 | WSM | Internal client group meeting to prepare for FCC brief | 0.4 | $214.48 | $85.79 |
| 9/22/2020 | WSM | Receive, distribute and do 1st review of FCC brief and provide 1st thoughts to client | 2.6 | $214.48 | $557.65 |
| 9/23/2020 | WSM | Develop rough outline and workplan/schedule for reply brief and send to client; begin legal research on APA/reasoned decisionmaking issues | 6.0 | $214.48 | $1,286.88 |
| 9/24/2020 | WSM | Work on joint plan of action and start brief drafting | 4.3 | $214.48 | $926.55 |
| 9/28/2020 | WSM | Re-read FCC brief; do legal research | 1.8 | $214.48 | $386.06 |
| 9/29/2020 | WSM | Work on brief organization and topics; compile cited case summaries and points to use them for; work on legal issues portion; start editing client's ICNIRP rebuttal | 4.0 | $214.48 | $857.92 |
| 9/30/2020 | WSM | Continue work on brief all issues | 4.0 | $214.48 | $857.92 |
| 10/1/2020 | WSM | Work on reply brief; edit/include client-drafted portions | 3.3 | $214.48 | $707.78 |
| 10/2/2020 | WSM | Finish edits to client drafted portion, await more client materials; edit various legal and specific issue portions; send to client | 7.0 | $214.48 | $1,501.36 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|------|--------|-------------|--------------|------|-------|
| 10/4/2020 | WSM | Continue editing client-supplied material; send back to client for record cite hole-filling; draft portion on requirement that FCC order be based only on record evidence | 7.8 | $214.48 | $1,672.94 |
| 10/5/2020 | WSM | Finish all CHD parts; work with client to fill holes; merge into single document; send to EHT; start on master brief template | 5.0 | $214.48 | $1,072.40 |
| 10/6/2020 | WSM | Continue editing brief; legal analysis | 7.0 | $214.48 | $1,501.36 |
| 10/7/2020 | WSM | Continue with brief; receive EHT partial material and work into master | 5.0 | $214.48 | $1,072.40 |
| 10/8/2020 | WSM | Continue with brief | 7.8 | $214.48 | $1,672.94 |
| 10/9/2020 | WSM | Continue with brief; all portions | 7.0 | $214.48 | $1,501.36 |
| 10/10/2020 | WSM | Review EHT-supplied material; confer w/ client; combine EHT material and put in cloud to share with client; further reduce volume of CHD material | 8.8 | $214.48 | $1,887.42 |
| 10/11/2020 | WSM | Confer w/ EHT; first run edits and preparation of EHT product for assimilation into combined master; work w/ client re various issues; review Italy court quotes re ICNIRP | 9.0 | $214.48 | $1,930.32 |
| 10/12/2020 | WSM | Work on Master v1 and v2; send updates to client; talk to Italian attorney re court decisions | 10.5 | $214.48 | $2,252.04 |
| 10/13/2020 | WSM | Work on Master v3 and 3.1; negotiate 3 day extension;  bring in EHT part III edits; discuss overall flow and structure with client; insert client supplied v3 edits into 3.1; prepare to do reorg and Italy cases insert | 10.0 | $214.48 | $2,144.80 |
| 10/14/2020 | WSM | Do v4 then reorg v.1; send to client | 9.0 | $214.48 | $1,930.32 |
| 10/15/2020 | WSM | Massive re-re org, put in master shell; start on significant volume reductions; start on table of contents and index coding; start authorities addendum | 10.8 | $214.48 | $2,316.38 |
| 10/16/2020 | WSM | Finish coding; do client edits; distribute to EHT; do own editing; finish statutory authorities addendum, including bringing in Italian cases/certs | 9.2 | $214.48 | $1,973.22 |
| 10/17/2020 | WSM | Continue editing  - input all comments by reviewers and client; input EHT changes; distribute | 10.0 | $214.48 | $2,144.80 |
| 10/18/2020 | WSM | Continue editing; cut 1000 words and do wordsmithing for narrative; work with client on final substantive issues; deliver semi-final to client and EHT | 11.0 | $214.48 | $2,359.28 |
| 10/19/2020 | WSM | Finish coordinating edits to brief; create final version and upload | 9.0 | $214.48 | $1,930.32 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| 10/20/2020 | WSM | Begin work on JA; conv w/ client group to organize effort; send email to FCC counsel regarding one FCC designation not in ECFS | 3.0 | $214.48 | $643.44 |
| 10/23/2020 | WSM | Work with client team on JA | 1.5 | $214.48 | $321.72 |
| 10/24/2020 | WSM | Work with team on JA issues | 1.2 | $214.48 | $257.38 |
| 10/25/2020 | WSM | Work with team on JA issues | 1.2 | $214.48 | $257.38 |
| 10/26/2020 | WSM | Negotiate, prepare and file consent motion to extend JA filing | 1.0 | $214.48 | $214.48 |
| 11/2/2020 | WSM | Work on JA and Index; share with FCC and EHT; status to client group | 5.0 | $214.48 | $1,072.40 |
| 11/3/2020 | WSM | Continue on JA; break into 25 volumes; work with client group on JA and index | 6.5 | $214.48 | $1,394.12 |
| 11/4/2020 | WSM | Finish JA and upload to ECF; download PACER version and distribute through Dropbox | 6.8 | $214.48 | $1,458.46 |
| 11/9/2020 | WSM | Work on fixing JA issues; create supplement JA with 2 items; conv w/ EHT counsel; conv w/ client | 2.5 | $214.48 | $536.20 |
| 11/10/2020 | WSM | Work on bringing JA cites into both briefs (final briefs); re-do table of contents and index of authorities into final initial | 8.8 | $214.48 | $1,887.42 |
| 11/11/2020 | WSM | Finish both final briefs and distribute; work on addenda | 8.5 | $214.48 | $1,823.08 |
| 11/12/2020 | WSM | Finish final briefs; finish both statutory addenda; upload to ECF; download from PACER and send to client | 6.0 | $214.48 | $1,286.88 |
| 11/13/2020 | WSM | Finish preparing, upload and distribute corrected JA Vols 8 and 19; Finish preparing, upload and distribute Suppl JA Vol 27; oversee pick up and delivery for shipping | 3.2 | $214.48 | $686.34 |
| 11/19/2020 | WSM | Get Suppl. JA and Final Briefs (w/ Addenda) reproduction ready; verify all is correct, oversee shipping | 1.5 | $214.48 | $321.72 |
| 11/20/2020 | WSM | Draft motion for leave to file Suppl JA; circulate to parties; file with court | 1.5 | $214.48 | $321.72 |
| 11/30/2020 | WSM | Discussion w/ client re case and argument planning; quick research on audio vs. video argument issues | 0.8 | $214.48 | $171.58 |
| 12/17/2020 | WSM | Gather materials for moot court panel, do summary of issues; work with client and other petitioners on oral argument motion | 2.8 | $214.48 | $600.54 |
| 12/18/2020 | WSM | Continue gathering materials for moot court; start working on moot draft argument | 3.0 | $214.48 | $643.44 |
| 12/19/2020 | WSM | Review all main cases for oral arg prep | 4.0 | $214.48 | $857.92 |
| 12/20/2020 | WSM | Finish prep for first moot prep meeting; do first moot prep meeting | 6.0 | $214.48 | $1,286.88 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| 12/29/2020 | WSM | Get panel makeup; do panel research - obtain and begin reading all adlaw and related issues decisions each member; work on argument - thematic ideas and rhetorical approach | 2.5 | $214.48 | $536.20 |
| 12/31/2020 | WSM | Prep for mock argument; further panel research | 3.8 | $214.48 | $815.02 |
| 2021 | | | | | |
| 1/2/2021 | WSM | Work up questions for moot panel; continue with argument prep; assimilate and add to agencies summary | 3.5 | $219.65 | $768.78 |
| 1/3/2021 | WSM | Continue with argument prep | 4.8 | $219.65 | $1,054.32 |
| 1/4/2021 | WSM | Finish prep for and then do practice argument w/ moot panel | 5.5 | $219.65 | $1,208.08 |
| 1/13/2021 | WSM | Conv w/ clients - oral arg moot debrief, planning | 3.0 | $219.65 | $658.95 |
| 1/14/2021 | WSM | Continue with argument prep; review client-supplied information; convs w/ client | 2.8 | $219.65 | $615.02 |
| 1/15/2021 | WSM | Receive court argument orders; convs w/ client; conv w/ EHT counsel; report to client | 2.2 | $219.65 | $483.23 |
| 1/17/2021 | WSM | Pick back up with oral argument prep; conv w/ EHT counsel; receive information and potential demonstratives from client; review client supplied "agencies" and "science" summaries | 4.8 | $219.65 | $1,054.32 |
| 1/18/2021 | WSM | Review client materials on anticipated panel questions; develop answers | 3.5 | $219.65 | $768.78 |
| 1/19/2021 | WSM | Create and file demonstrative exhibit; continue preparing argument script | 4.4 | $219.65 | $966.46 |
| 1/20/2021 | WSM | Start developing combined (all petitioners') oral argument; do record research; send 1st rough to client and EHT | 4.6 | $219.65 | $1,010.39 |
| 1/21/2021 | WSM | Start on briefing book; organize materials; multiple editing rounds on script; convs w/ client | 3.8 | $219.65 | $834.67 |
| 1/22/2021 | WSM | Continue argument prep; do crib sheets and lists; do court-sponsored training session for Zoom; do another practice run | 8.5 | $219.65 | $1,867.03 |
| 1/23/2021 | WSM | Build briefing books; continue memorizing cases/studies/briefs; convs w/ client | 10.0 | $219.65 | $2,196.50 |
| 1/24/2021 | WSM | Finish day before preparation all things | 10.0 | $219.65 | $2,196.50 |
| 1/25/2021 | WSM | Do argument; debriefs; start working on supplemental filing | 4.8 | $219.65 | $1,054.32 |
| 1/26/2021 | WSM | Work on post-argument submittal re two committees; review FCC post-argument submittal; research FDA rules | 3.0 | $219.65 | $658.95 |
| 1/27/2021 | WSM | Work with EHT counsel re post-argument submission | 2.0 | $219.65 | $439.30 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|------|--------|-------------|--------------|------|-------|
| 8/13/2021 | WSM | Receive, analyze and explain panel opinion to clients | 4.0 | $219.65 | $878.60 |
| | | **2020 Subtotal - WSM** | **707.5** | **$214.48** | **$151,748.89** |
| | | **2021 Subtotal - WSM** | **85.2** | **$219.65** | **$18,714.18** |
| | | **2020 and 2021 - WSM** | **792.7** | | **$170,463.07** |
| | | | | | |
| | | **Biller - Pandy Shen (Paralegal) (PS)** | | | |
| 5/29/2020 | PS | Pandy Shen Task 1: FCC Search, Record Question Research | 7.5 | $60.00 | $450.00 |
| 5/30/2020 | PS | Pandy Shen- research on extra-record evidence precedent | 7.5 | $60.00 | $450.00 |
| 6/2/2020 | PS | - extra-record ev. rule memo | 5.0 | $60.00 | $300.00 |
| 6/3/2020 | PS | -review draft Carpenter affidavit | 2.9 | $60.00 | $300.00 |
| 6/4/2020 | PS | - read through other source materials (CHD initial brief template)<br>- work on Carpenter affidavit | 7.8 | $60.00 | $465.00 |
| 6/8/2020 | PS | - read through other source materials (CHD initial brief template,CHD inserts using draft briefing structure, client microwave sickness) | 1.0 | $60.00 | $60.00 |
| 6/10/2020 | PS | - review Carpenter affidavit<br>- read through other source materials (CHD initial brief template, CHD inserts using draft briefing structure, client microwave sickness) | 12.8 | $60.00 | $765.00 |
| 6/13/2020 | PS | - look over and incorporate client edits to Carpenter affidavit<br>- review for cases cited in Carpenter affidavit | 3.0 | $60.00 | $180.00 |
| 6/15/2020 | PS | - look and incorporate client edits<br>- exhibit for cases cited in Carpenter affidavit | 4.0 | $60.00 | $240.00 |
| 6/16/2020 | PS | - continue work on Carpenter affidavit, incorporate client's edits<br>- exhibit for cases cited in Carpenter affidavit | 4.2 | $60.00 | $255.00 |
| 6/18/2020 | PS | - continue work on Carpenter affidavit, incorporate client's edits<br>- exhibit for cases cited in Carpenter affidavit | 5.5 | $60.00 | $330.00 |
| 6/20/2020 | PS | - look over and insert client edits to Carpenter affidavit-exhibit for cases cited in Carpenter affidavit | 4.0 | $60.00 | $240.00 |
| 6/21/2020 | PS | - continue work on Carpenter affidavit, incorporate client's edits<br>- exhibit for cases cited in Carpenter affidavit | 7.0 | $60.00 | $420.00 |
| 7/21/2020 | PS | - finish reading joint brief<br>- flag redundancies<br>- start cutting down & editing our sections | 8.8 | $60.00 | $528.00 |
| 7/21/2020 | PS | - flag redundancies in joint brief<br>- cut down & edit our sections | 6.5 | $60.00 | $390.00 |
| 7/25/2020 | PS | - second pass brief editing (grammar-only) | 8.5 | $60.00 | $510.00 |
| 7/26/2020 | PS | - citing to standing affidavits for standing | 10.5 | $60.00 | $630.00 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|------|--------|-------------|--------------|------|-------|
| 7/27/2020 | PS | - continue editing and filling holes in master brief | 1.0 | $60.00 | $60.00 |
| 7/28/2020 | PS | - grammar edits to brief (7-27 master & new 7-28 master) | 7.0 | $60.00 | $420.00 |
| 7/30/2020 | PS | - review brief & check for empty citations | 6.0 | $60.00 | $360.00 |
| 8/25/2020 | PS | -Pull docs for JA | 1.0 | $60.00 | $60.00 |
| 8/28/2020 | PS | -Pull docs for JA | 1.0 | $60.00 | $60.00 |
| 8/29/2020 | PS | -Pull docs for JA | 1.0 | $60.00 | $60.00 |
| 8/30/2020 | PS | -Pull docs for JA | 1.0 | $60.00 | $60.00 |
| 9/1/2020 | PS | -Pull docs for JA | 0.7 | $60.00 | $42.00 |
| 9/9/2020 | PS | - discuss with client re JA and look over google sheets she sent over | 0.5 | $60.00 | $30.00 |
| 9/11/2020 | PS | - discuss with client re JA and look over google sheets she sent over<br>- start inputting footnotes<br>-Pull docs for JA | 0.5 | $60.00 | $30.00 |
| 9/12/2020 | PS | - start inputting footnotes<br>-Pull docs for JA | 8.8 | $60.00 | $528.00 |
| 9/14/2020 | PS | - finish inputting footnotes into database | 8.2 | $60.00 | $492.00 |
| 9/20/2020 | PS | - follow up with client to check in<br>- enter filing links into database | 4.2 | $60.00 | $252.00 |
| 9/21/2020 | PS | - enter filing links into database | 6.5 | $60.00 | $390.00 |
| 9/22/2020 | PS | - enter filing links into database | 3.0 | $60.00 | $180.00 |
| 9/23/2020 | PS | - enter filing links into database | 3.0 | $60.00 | $180.00 |
| 9/24/2020 | PS | - enter filing links into database<br>- phone call with WSM for next tasks<br>- pull FCC brief cases for WSM | 0.5 | $60.00 | $30.00 |
| 9/25/2020 | PS | - enter filing links into database<br>- read FCC brief<br>- pull FCC brief cases for WSM | 3.0 | $60.00 | $180.00 |
| 9/26/2020 | PS | - enter filing links into database<br>- finish pulling FCC brief cases for WSM | 2.0 | $60.00 | $120.00 |
| 9/27/2020 | PS | - enter filing links into database | 1.0 | $60.00 | $60.00 |
| 10/1/2020 | PS | - enter filing links into database | 9.0 | $60.00 | $540.00 |
| 10/2/2020 | PS | - enter filing links into database | 7.8 | $60.00 | $468.00 |
| 10/23/2020 | PS | JA:<br>- make cover pages<br>- download evidence | 0.5 | $60.00 | $30.00 |
| 10/24/2020 | PS | JA:<br>- make cover pages<br>- download evidence | 3.0 | $60.00 | $180.00 |
| 10/25/2020 | PS | JA:<br>- make cover pages<br>- download evidence | 8.2 | $60.00 | $492.00 |
| 10/26/2020 | PS | JA:<br>- make cover pages<br>- download evidence | 5.5 | $60.00 | $330.00 |

| Date | Biller | Description | Billed Hours | Rate | Total |
|------|--------|-------------|--------------|------|-------|
| 10/27/2020 | PS | JA:<br>- make cover pages<br>- download evidence<br>- coordinate with client & client to replace various cover pages | 1.8 | $60.00 | $108.00 |
| 10/28/2020 | PS | JA:<br>- make cover pages<br>- download evidence<br>- start making base doc JA | 7.0 | $60.00 | $420.00 |
| 10/29/2020 | PS | JA:<br>- make cover pages<br>- download evidence<br>- continue making base doc JA | 8.0 | $60.00 | $480.00 |
| 10/30/2020 | PS | JA:<br>- make cover pages<br>- download evidence<br>- continue making base doc JA | 8.0 | $60.00 | $480.00 |
| 10/31/2020 | PS | JA:<br>- make cover pages<br>- download evidence<br>- continue making base doc JA | 9.0 | $60.00 | $540.00 |
| | | **2020 Subtotal - PS** | **234.2** | **$60.00** | **$14,052.00** |
| | | **2021 Subtotal - PS** | **0.0** | **$60.00** | **$0.00** |
| | | **2020 and 2021 - PS** | **234.2** | **$60.00** | **$14,052.00** |
| | | | | | |
| | | **Total all Billers** | | | **$184,515.07** |